UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEYENNE LOLA JULIAN, | No. 2:22-cv-01775 AC |
| Plaintiff, | |
| v. | ORDER |
| MARTIN O'MALLEY, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f.[1] For the reasons that follow, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

////

////

---

[1] SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

1

## I. PROCEDURAL BACKGROUND

Plaintiff filed applications for supplemental security income and child disability benefits in 2014 and 2015, respectively. AR 239, 248. ALJ Mary Beth O'Connor originally denied the applications on October 3, 2017. AR 16-27. The matter was remanded by this court after a stipulated motion to remand in December 2019. AR 901-903. ALJ Michael Cabotaje held another hearing on May 13, 2021 (AR 847-880) and issued a decision on May 26, 2021 (AR 944-956). Plaintiff's counsel submitted a written brief with exceptions to the ALJ's decision. AR 1385-1392. The ALJ, on his own initiative, reopened the case, obtained new medical expert testimony from A. Pdczerwinsky, a medical expert, and held a supplemental hearing on September 23, 2021. AR 803-04, 828-847. The ALJ issued the decision now before the court on October 27, 2021. AR 803-819. The ALJ's decision became the agency's final decision when the Appeals Council denied review on September 9, 2022. AR 794-96.

Plaintiff filed this action on October 7, 2022. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties consented to the jurisdiction of the magistrate judge. ECF No. 10. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 11 (plaintiff's summary judgment motion), 15 (Commissioner's summary judgment motion), 16 (plaintiff's response).

## II. FACTUAL BACKGROUND

Plaintiff was born in 1996, and she alleged disability beginning prior to age 22. AR 239. Plaintiff can communicate in English. Id. Plaintiff attended special education classes while in school and has a 12th grade education. AR 291. Plaintiff alleged impairments due to an enlarged heart, leakage across ventricular septal defect, and learning disability. AR 290.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

////

IV.  RELEVANT LAW

Supplemental Security Income is available for every eligible individual who is "disabled." 42 U.S.C. § 1381a.  Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'"  Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. § 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. § 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id., § 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id., § 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id., § 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id., § 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can

engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

1. Born on June 16, 1996, the claimant had not attained age 22 as of June 16, 2014, the amended alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

2. [Step 1] The claimant engaged in substantial gainful activity during the following periods: July of 2019 through September of 2020 (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3. [Step 1] However, there have been continuous 12-month periods during which the claimant did not engage in substantial gainful activity. The remaining findings address the periods the claimant did not engage in substantial gainful activity.

4. [Step 2] The claimant has the following severe impairments: congenital heart disease, borderline intellectual functioning, specific learning disability (20 CFR 404.1520(c) and 416.920(c)).

5. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

6. [Preparation for Step 4] After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can stand and walk for six hours and sit for six hours in an eight-hour workday and occasionally climb ladders, ropes, and scaffolds. She can perform no work at unprotected heights. She has the concentration, persistence, and pace to perform one- to two-step tasks, and she requires assistance with reading and math.

7. [Step 4] The claimant has no past relevant work (20 CFR 416.965).

8. [Step 5] The claimant was born [in 1996] and was 18 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963).

9. [Step 5, continued] The claimant has at least a high school education (20 CFR 416.964).

    10. [Step 5, continued] Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

    11. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CF'R 416.969 and 416.969(a)).

    12. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 1999, through the date of this decision (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

AR 806-19. As noted, the ALJ concluded that plaintiff was "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 819.

## VI. ANALYSIS

Plaintiff alleges that the ALJ erred by (1) erroneously discounting social work restrictions assessed by the State agency mental health consultants, E. Adamo, Ph.D., and L. Colsky, M.D.; (2) failing to properly evaluate the examining opinion of the consulting psychologist, Sherry Lebeck, Ph.D.; and (3) failing to resolve apparent inconsistencies between the vocational expert's testimony and the Dictionary of Occupational Titles. ECF No. 11 at 6.

    A. <u>Evaluation of Drs. Adamo and Colsky</u>

Plaintiff contends that the ALJ erred in discounting restrictions related to social interaction that were assessed by Agency mental health consultants Dr. E. Adamo and Dr. L. Colsky. ECF No. 11 at 6-8. Generally, there are three types of physicians that can offer opinions in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir.1995), <u>see also</u> <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506, n4 (9th Cir.1990).[2] The opinion of a treating physician is normally given more weight than the opinion of an examining physician, and the opinion of a non-examining physician is given the least amount of weight. <u>Id.</u>; <u>Baxter v.</u>

---

[2] Plaintiff filed for disability prior to March 27, 2017. Therefore, the Social Security Administration's 2017 revised regulations governing the consideration of medical opinions do not apply. <u>See</u> 20 C.F.R. §§ 404.1520c, 416.920c (2017).

6

Sullivan, 923 F.2d 1391, 1396 (9th Cir.1991).  For the ALJ to reject the opinion of a physician, they must put forth the required rationale.  If the ALJ rejects the opinion of a treating or examining physician, where that opinion is not contradicted, the ALJ must point to "clear and convincing" reasons for the rejection.  Lester, 81 F.3d at 830–31.  If the opinion is contradicted by another doctor, the opinion of the treating or examining physician can be rejected only if the ALJ provides "specific and legitimate" reasons for doing so.  Id.; Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).  "An ALJ may reject the opinion of nonexamining physicians so long as the ALJ references specific evidence in the medical record that supports doing so."  Burkett v. Saul, 806 Fed.Appx. 509, 511 (9th Cir. Mar. 6, 2020) (internal citations omitted).

      Here, State agency psychologist, E. Adamo, Ph.D., reviewed plaintiff's record and opined that plaintiff could perform simple work, but that she was limited to interacting verbally with others on a brief and superficial level.  AR 95.  Dr. Adamo assessed moderate limitations in the ability to get along with coworkers and peers without distracting them or exhibiting behavioral extremes, and moderate limitations interacting with the general public.  AR 95.  Dr. Adamo noted that plaintiff had expressive language weakness, and specifically cited to an expressive vocabulary score of 79 and articulation errors that reduced overall speech intelligibility.  AR 105.  On April 20, 2015, a State agency psychiatrist, L. Colsky, M.D., agreed with the mental work restrictions assessed by Dr. Adamo.  AR 124.

      The ALJ "gave weight" to the State agency mental health consultants' opinions regarding the to the limitation to simple tasks, but found the limitations on interacting with others to be unsupported and inconsistent with evidence at the hearing.  AR 817.  The ALJ acknowledged that the consultants' "review of the evidence generally supports their opinion[,]" citing plaintiff's failure of her high school exit exam, IQ scores in the borderline range, a history of speech problems, and testing that showed she had cognitive deficits.  AR 817.  However, citing the hearing testimony generally, the ALJ reasoned that because plaintiff has worked since 2016 and reported no problems interacting with customers, and the records reflect "no persistent symptoms or ongoing treatment[,]" the record was inconsistent with a limitation on interacting with others.  AR 817.

7

The ALJ's rationale for discounting the assessed social limitations is not well supported by the non-specific reference to hearing testimony or by the non-specific reference to the lack of ongoing treatment. The May 13, 2021 hearing transcript reflects that plaintiff's aunt, who got plaintiff the position at Lucky Supermarket, testified that she was surprised plaintiff still has the job because she has difficulty interacting with her managers and has been written up. AR 867-69. Indeed, regarding plaintiff's work activity, her description of duties (bagging groceries, cleaning spills, moving carts) did not indicate that she engaged in more than brief and superficial interaction with customers or coworkers. See AR 856. She testified she gets along with her bosses "occasionally." AR 858. Earlier hearing testimony from April 28, 2017, shows that when asked whether plaintiff got along with her coworkers, plaintiff responded "sometime" and explained that they would "get on my case of not doing the job properly." AR 47. The ALJ followed up, "So other than that, have you pretty much gotten along with, you know, the other workers?" and plaintiff responded "yeah." AR 48. This is not a clear statement that plaintiff was able to maintain more than minimal functional interactions with coworkers and customers. The ALJ did not reference specific evidence in the record to support discounting the assessed social limitations, and a review of the ALJ's general references does not support the ALJ's conclusion. The ALJ erred by discounting the assessed social limitations without a proper basis.

  B.  <u>The ALJ Failed to Properly Evaluate Dr. Lebeck's Opinion</u>

On May 26, 2016, plaintiff attended a psychological evaluation performed under the supervision of Sherry Lebeck, Ph.D. AR 739-751. Plaintiff scored a full-scale IQ of 71 on intelligence testing and was diagnosed with borderline intellectual functioning. AR 742, 748. As mentioned above, the ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons. Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (internal citations omitted). Here, the ALJ gave the opinion "little weight as it does not provide a function-by-function assessment, but suggests the claimant is capable of working with a

////

1  limitation to simple tasks, consistent with the evidence of record." AR 815.  Plaintiff asserts this
2  is error.  The court agrees.

3  The parties both acknowledge that when presented with a medical opinion that does not
4  use typical terminology, the ALJ must "translate" terms of art contained in non-Social Security
5  medical opinions "into the corresponding Social Security terminology in order to accurately
6  assess the implications of those opinions for the Social Security disability determination."  Booth
7  v. Barnhart, 181 F. Supp. 2d 1099, 1106 (C.D. Cal. 2002).  They disagree on whether such
8  "translation" occurred in this case.

9  Dr. Lebeck opined that plaintiff "would benefit from learning in small chunks of no more
10  than four components of information at a time that are simple in nature[;] repeated exposure to
11  new information and [being] allowed at least 20 minutes to consolidate newly learned
12  information[; and] being given new information in verbal and visuospatial forms, to include
13  making written notes."  AR 750.  Defendant argues that though the ALJ found Dr. Lebeck did not
14  complete a "a function-by-function assessment," he that these recommendations were consistent
15  "with a limitation to simple tasks . . . ."  AR 815.  Thus, argues defendant, the ALJ adopted and
16  exceeded Dr. Lebeck's opinion by limiting plaintiff to "one- to two-step tasks" and requiring
17  "assistance with reading and math."  ECF No. 15 at 8.  Plaintiff argues that the "little weight"
18  comment indicates the opinion was rejected and not "translated," and that contrary to defendant's
19  assertion, a limitation to simple work did not accommodate Dr. Lebeck's assessment of
20  limitations regarding how plaintiff learns new information because regardless of the simplicity of
21  work tasks, plaintiff would need to learn how to perform any new occupation, and restrictions on
22  her ability to retain and process new information constituted a substantial barrier to employment.
23  ECF No. 16 at 3.

24  The court agrees with plaintiff that the ALJ did not translate Dr. Lebeck's assessment into
25  typical functional limitations.  The opinion itself is quite clear that ALJ assigned "little weight" to
26  the opinion because it did not contain a function-by-function assessment, and the ALJ did not
27  address the learning limitations identified by Dr. Lebeck at all.  AR 815.  The ALJ finding the
28  opinion consistent with a limitation to one-to-two step tasks does not clearly incorporate Dr.

Lebeck's findings, which include significant limitations regarding the integration of new information. The ALJ was not permitted to summarily reject Dr. Lebeck's argument because it did not contain a function-by-function assessment; that rationale does not constitute "clear and convincing reasons that are supported by substantial evidence." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017). Thus, the ALJ erred.

### C. The ALJ Did Not Fail to Resolve Inconsistencies Between the VE and the DOT

At step five of the sequential evaluation process, the Commissioner has the burden "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir.1995); see also 20 C.F.R. § 416.920(g). The ALJ may consult a series of vocational resources, including a vocational expert (VE) and the Dictionary of Occupational Titles (DOT). See Lamear v. Berryhill, 865 F.3d 1201, 1205 (9th Cir. 2017).

> Although evidence provided by a vocational expert "generally should be consistent" with the Dictionary of Occupational Titles, '[n]either the [Dictionary of Occupational Titles ] nor the [vocational expert] ... evidence automatically 'trumps' when there is a conflict.' Thus, the ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the Dictionary of Occupational Titles.

Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007), quoting SSR 00–4p at *2. "For a difference between an expert's testimony and the Dictionary's listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the Dictionary's listing of job requirements that are essential, integral, or expected." Gutierrez v. Colvin, 844 F.3d 804, 808 (9th Cir. 2016).

Here, the VE testified that an individual with plaintiff's RFC "would be able to perform the requirements of representative occupations such as laundry laborer (DOT # 361.687-018; unskilled (SVP 2); reasoning level 1; medium exertion; 10,000 jobs nationally), general inspector (DOT # 739.687-038; unskilled (SVP 2); reasoning level 1; light exertion; 12,500 jobs nationally), and lens inserter (DOT # 713.687-026; unskilled (SVP 2); reasoning level 1; sedentary exertion; 11,000 jobs nationally)." AR 818-819. Plaintiff asserts that the ALJ failed to

1    resolve a conflict because the VE's testimony that a hypothetical person restricted to 1 to 2-step
2    tasks and requiring assistance with reading and math could perform these jobs, where the DOT
3    identifies each of these occupations as involving a Language Level of 1 and a Math Level of 1.
4    ECF No. 11 at 11.

5      The DOT describes a Language Level of 1 as involving "Recognize meaning of 2,500
6    (two- or three-syllable) words.  Read at rate of 95-120 words per minute. Compare similarities
7    and differences between words and between series of numbers." See, e.g., DOT No. 361.687-
8    018, 1991 WL 672992.  The DOT describes a Math Level of 1 as involving: "Add and subtract
9    two-digit numbers.  Multiply and divide 10's and 100's by 2, 3, 4, 5.  Perform the four basic
10   arithmetic operations with coins as part of a dollar.  Perform operations with units such as cup,
11   pint, and quart; inch, foot, and yard; and ounce and pound." Id.  The VE testified that each of the
12   aforementioned jobs could be learned with a short demonstration and did not require any reading
13   or math.  AR 877.  The ALJ did not ask whether the "no reading" and "no math" statements were
14   consistent with the descriptions in the DOT.

15     Defendant argues that there is no apparent conflict between the DOT and the VE's
16   testimony because nothing in the actual "job descriptions suggests there was any reading or math
17   involved in [the named jobs'] performance, and so reading and math were not essential, integral,
18   or expected in these occupations." ECF No. 15 at 1.  Defendant relies on Gutierrez v. Colvin, in
19   which the Ninth Circuit stated that for a conflict to be apparent, "the testimony must be at odds
20   with the Dictionary's listing of job requirements that are essential, integral, or expected.  This is
21   not to say that ALJs are free to disregard the Dictionary's definitions or take them with a grain of
22   salt—they aren't.  But tasks that aren't essential, integral, or expected parts of a job are less likely
23   to qualify as apparent conflicts that the ALJ must ask about."  844 F.3d at 808.

24     Here, the DOT's description of the job "laundry laborer" includes, among other duties,
25   "weighs laundry on scales and records weight on tickets."  361.687-018 Laundry Laborer,
26   DICOT 361.687-018, 1991 WL 672992.  The description of "block inspector" reads: "Observes
27   wooden match blocks passing on conveyor and removes those containing pitch pockets, faulty
28   grain, and knots."  739.687-038 Block Inspector, DICOT 739.687-038, 1991 WL 680182.  The

job "lens inserter" description reads: "Fits lenses into plastic sunglass frames and places frames on conveyor belt that passes under heat lamps which soften frames preparatory to setting of lenses." 713.687-026 Lens Inserter, DICOT 713.687-026, 1991 WL 679273. The court agrees with defendant that at least two of these occupations, block inspector and lens inserter, do not contain duties that conflict with the VE testimony. While the position of laundry laborer contains a possible conflict, any error is harmless because at least two other occupations are available.

### D. Remand for Further Consideration is Necessary

As discussed above, the ALJ erred in erred by improperly considering the medical opinions of Drs. Adamo, Colsky, and Lebeck. The undersigned agrees with plaintiff that the ALJ's error is harmful and remand for further proceedings by the Commissioner is necessary. An error is harmful when it has some consequence on the ultimate non-disability determination. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006). The ALJ's error in this matter was harmful; correcting the errors may very well result in a more restrictive residual functional capacity assessment, which may in turn alter the finding of non-disability.

It is for the ALJ to determine in the first instance whether plaintiff has severe impairments and, ultimately, whether he is disabled under the Act. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) ("the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court"). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). Further development of the record consistent with this order is necessary, and remand for further proceedings is the appropriate remedy.

### VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 15), is DENIED;

3. The matter is REMANDED to the Commissioner for further proceedings consistent with this order; and

1    4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

2    SO ORDERED.

3  DATED: February 28, 2024

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE